IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**RICKY BARNETT**                                                                                  **PLAINTIFF**

**V.**                                                        **CIVIL ACTION NO. 2:15-CV-2-KS-MTP**

**DEERE & COMPANY**                                                                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Plaintiff's Motion for Sanctions [117] for Defendant's alleged spoliation of evidence.

*A.   Background*

This is a product liability case. The Court discussed its factual background in a previous opinion. *See* Memorandum Opinion and Order at 1-2, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 15, 2015), ECF No. 26. Plaintiff claims that he was paralyzed when a lawn mower designed and manufactured by Defendant, the EZtrak Z425, rolled over on top of him, and that a defect in the lawn mower's design caused the accident and his injuries. The Court now considers Plaintiff's Motion for Sanctions [117] for Defendant's alleged spoliation of evidence. Plaintiff contends that Defendant destroyed documents relevant to this litigation to deny access to them. Plaintiff seeks the following sanctions: a default judgment, striking Defendant's pleadings, and/or an adverse inference instruction at trial.

*B.   Applicable Law*

"Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). A party

seeking sanctions "based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010), *cited with approval in Guzman*, 804 F.3d at 713.

With respect to the first element, "[a] party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman*, 804 F.3d at 713. "Generally, the duty to preserve extends to documents or tangible things . . . by or to individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Rimkus*, 688 F. Supp. 2d at 612-13. Determining "when a duty to preserve arises in a particular case and the extent of that duty requires careful analysis of the specific facts and circumstances." *Id.* at 613.

As for the second element, the Fifth Circuit permits "an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of bad faith or bad conduct." *Guzman*, 804 F.3d at 713. Bad faith "generally means destruction for the purpose of hiding adverse evidence." *Id.* "Mere negligence is not enough" to sustain a finding of spoliation, *Vick v. Tex. Employment Comm.*, 514 F.2d 734, 737 (5th Cir. 1975), and if one may "just as reasonably infer from the facts" that the alleged spoliator was negligent, a finding of bad faith is inappropriate. *Stahl v. Wal-Mart Stores, Inc.*, 47 F.

Supp. 2d 783, 787 (S.D. Miss. 1998).

Finally, the Fifth Circuit does not permit sanctions for spoliation unless the party seeking sanctions proves that "the spoliated evidence would have been relevant." *Rimkus*, 688 F. Supp. 2d at 617 (citing *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)).

The party seeking a spoliation finding and sanctions bears the burden of proof. *Id.* at 615. "Spoliation is a serious offense and a party's intentional destruction of relevant evidence threatens the sanctity and spirit of the judicial process. However, the imposition of sanctions under the court's inherent power is powerful medicine that should be administered with great restraint." *Union Pump Co. v. Centrifugal Tech., Inc.*, 404 F. App'x 899, 906 (5th Cir. 2010). The Court's determination depends "heavily on the facts and circumstances of each case and cannot be reduced to a generalized checklist of what is acceptable or unacceptable." *Rimkus*, 688 F. Supp. 2d at 613.[1]

---

[1] Rule 37(e) addresses the available discovery sanctions for a party's failure to preserve electronically stored information. *See* FED. R. CIV. P. 37(e). Plaintiffs did not address Rule 37(e) in their initial brief, and the Court declines to consider arguments raised for the first time in reply. *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 492 (5th Cir. 2014) (court does not generally consider arguments raised for the first time in reply). Furthermore, the Fifth Circuit has not clarified whether its prior spoliation jurisprudence has been abrogated or otherwise amended pursuant to the latest amendment of Rule 37(e).

Regardless, the result of this motion would not change, as Rule 37(e) requires a "finding that the party acted with intent to deprive another party of the information's use in the litigation . . . ." FED. R. CIV. P. 37(e)(2). To the extent that Rule 37(e) permits less severe sanctions in cases where bad faith has not been shown, Plaintiff has only proposed that the Court bar Defendant and its experts from relying on or presenting evidence of the disputed information – including any testimony or other evidence that Defendant performed any testing on the lawn mower's design. In the Court's opinion, such a sanction would be "greater than

## C. *Discussion*

### 1. *The Documents*

Plaintiff contends that Defendant breached its duty to preserve three different categories of documents. First, he contends that Defendant had an obligation to preserve documents generated as a result of its Hazard Discovery and Rating System, one of the tools it employs to insure that "products are safe and acceptable for their intended use." Exhibit H to Motion for Sanctions at 3, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 18, 2016), ECF No. 117-8. In discovery responses, Defendant described the HDRS documents as "a guide for John Deere design engineers to help them evaluate potential areas of safety concern when they are designing products." Exhibit A to Motion for Sanctions at 6, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 18, 2016), ECF No. 117-1. According to Defendant's counsel, the "HDRS work sheets no longer exist for this mower . . . ." Exhibit B to Motion for Sanctions at 1, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 18, 2016), ECF No. 117-2. Defendant's document retention policy provides that all HDRS records are retained until the product is shipped, at which point they are electronically destroyed. Exhibit D to Motion for Sanctions at 2, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 18, 2016), ECF No. 117-4.

Next, Plaintiff argues that Defendant had an obligation to preserve the minutes

---

necessary to cure the alleged prejudice . . . ," even if Plaintiff could prove the other elements of spoliation. FED. R. CIV. P. 37(e)(1). Indeed, Plaintiff will already have the opportunity to cross-examine Defendant's witnesses with regard to the alleged testing.

4

from Defendant's Product Safety Committee meetings. The Product Safety Committee "is charged with determining that a product is safe and ready for customer use before it authorizes production." Exhibit H [117-8], at 3. Defendant's document retention policy provides that the minutes from its Product Safety Committee meetings are retained for five years, and then they are electronically destroyed. Exhibit D [117-4], at 2.

Finally, Plaintiff argues that Defendant should have preserved all documents related to product testing performed between 2002 and 2006 on the subject lawn mower design, including field tests related to the slope the lawn mower could traverse without rolling over. Deere represented in its discovery responses that "it reviews and tests all of its products for safety, including the [subject lawn mower], and at every stage of development, including during research, engineering, manufacture and field testing, to develop the specifications to which the deliverable products are manufactured." Exhibit A [117-1], at 23. The lawn mower in this case allegedly "underwent such testing and passed." *Id.*

According to Defendant's engineering expert, Kyle Ressler,[2] and Defendant's responses to Plaintiffs' interrogatories, the lawn mower "was . . . tested in accordance with the state of the art at the time of its manufacture, design and testing." Exhibit H [117-8], at 5; Exhibit I to Motion for Sanctions at 3, *Barnett v. Deere & Co.*, No. 2:15-CV-

---

[2] Ressler worked as a design engineer and senior engineer on the lawn mower model at issue in this case. Exhibit B to Reply at 9, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. August 1, 2016), ECF No. 183-2. He "designed and engineered components and subsystems, [and] performed tests, reviews, [and] performance evaluations . . . ." *Id.*

2-KS-MTP (S.D. Miss. May 18, 2016), ECF No. 117-9. According to Ressler, "literally thousands of tests" were performed on the design, and "it's common for [Defendant] to run and rerun and re-evaluate certification and safety tests multiple times throughout the year . . . over the life of these vehicles . . . ." Exhibit B to Reply at 9, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. August 1, 2016), ECF No. 183-2. Ressler said that he performed "literally thousands of tests" on the EZtrak Z425, including a "tilt test." *Id.*

Defendant's counsel represented to Plaintiff's counsel that documents generated pursuant to field tests of the subject lawn mower no longer exist. Exhibit B [117-2], at 1. Defendant's document retention policy provides that all "Analysis, Lab Test, and Field Performance" documents are retained for ten years, and then they are electronically destroyed. Exhibit D [117-4], at 2.

   *2.   Duty to Preserve*

Plaintiff argues that Defendant had a duty to preserve the documents because it knew or should have known that they may be relevant to future litigation. Plaintiff reasons that Defendant "has a long history of litigating rollover claims," and that it should have foreseen that it would be sued over similar claims pertaining to the EZtrak Z425. However, Plaintiff has not cited any legal authority providing that the duty to preserve can arise from such a generalized, hypothetical threat of litigation. "The undeniable reality is that litigation is an ever-present possibility in our society. While a party should not be permitted to destroy potential evidence after receiving unequivocal notice of impending litigation, the duty to preserve relevant documents

6

should require more than a mere possibility of litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 621 (D. Colo. 2007).[3]

Plaintiff provided evidence that Defendant received four reports of rollover incidents involving the EZtrak Z425 between April 2011 and March 2013. Plaintiff did not direct the Court to evidence showing how many total units shipped, and the Court has no way of judging whether four incidents over three years is a significant rate of occurrence. Regardless, Plaintiff did not file suit until April 2, 2014, and Defendant was not served until April 14, 2014. Exhibit F to Notice of Removal at 4, 13, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. Jan. 15, 2015), ECF No. 1-7. Therefore, at the earliest, Defendant's duty to preserve attached on April 14, 2014 – when it received notice of Plaintiff's claims.

The subject lawn mower was manufactured in 2007. Exhibit A to Motion for Summary Judgment at 1, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. June 15, 2016), ECF No. 137. Defendant's document retention policy provides that all

---

[3]Numerous federal courts have implicitly assumed that the duty to preserve is determined by reference to the specific claims asserted in each case. *See, e.g. King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (where defendant was unaware at the time it destroyed malfunctioning equipment that the plaintiff intended to seek recovery based on the malfunction, defendant had no duty preserve the equipment); *Hill v. Cundiff*, 797 F.3d 948, 967 n. 10 (11th Cir. 2015) (no duty to preserve certain documents until plaintiff filed complaint because earlier preservation letter did not address them); *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (no duty to preserve evidence where party had no warning of future litigation); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-17 (S.D.N.Y. 2003) (court referred to specific emails pertaining to specific plaintiff when determining whether duty to preserve had arisen, and testimony from defendant as to when he first anticipated litigation with the plaintiff).

HDRS records are retained until the product is shipped, at which point they are electronically destroyed. Exhibit D [117-4], at 2. It appears to be undisputed that the HDRS documents were destroyed in accordance with the document retention policy, several years prior to April 14, 2014. Accordingly, Defendant had no duty to preserve the HDRS documents at the time they were destroyed.

Defendant's document retention policy provides that the minutes from its Product Safety Committee meetings are retained for five years, and then they are electronically destroyed. *Id.* It appears to be undisputed that the Product Safety Committee minutes were destroyed in accordance with the document retention policy. The record is unclear as to when the Product Safety Committee meetings occurred, but it appears to be undisputed that they occurred prior to the date the unit was manufactured. Therefore, they had to have been destroyed at least two years before Defendant received notice of Plaintiff's claims. Accordingly, Defendant had no duty to preserve the Product Safety Committee minutes at the time they were destroyed.

   3. *Bad Faith*

As noted above, the Fifth Circuit permits "sanctions against the spoliator only upon a showing of bad faith or bad conduct." *Guzman*, 804 F.3d at 713. In this context, bad faith "generally means destruction for the purpose of hiding adverse evidence." *Id.* "[T]he circumstances of the act must manifest bad faith." *Vick*, 514 F.2d at 737. If one may "just as reasonably infer from the facts" that the alleged spoliator was negligent, a finding of bad faith is inappropriate. *Stahl*, 47 F. Supp. 2d at 787.

Plaintiffs have not presented sufficient evidence of bad faith to merit the

sanctions they have demanded – a default judgment in Plaintiff's favor, striking Defendant's pleadings, and/or an adverse inference instruction at trial.[4] Defendant presented undisputed evidence that it observes a document retention policy. *See, e.g.* Exhibit B [183-2], at 12; Exhibit D [117-4], at 2. It contends that the subject documents were destroyed pursuant to that policy.

The Court does "not draw an inference of bad faith when documents are destroyed under a routine policy." *Russell v. Univ. of Tex.*, 234 F. App'x 195, 208 (5th Cir. 2007).[5] Numerous federal courts have recognized that the routine destruction of information pursuant to a reasonable data retention policy is not grounds for sanctions. *See, e.g. FTC v. Lights of Am. Inc.*, 2012 U.S. Dist. LEXIS 17212, at *19-*20 (C.D. Cal. Jan. 20, 2012); *Viramontes v. United States Bancorp*, 2011 U.S. Dist. LEXIS 7850, at *12 (N.D. Ill. Jan. 27, 2011); *Cache La Pudre*, 244 F.R.D. at 623-24; *Broccoli v. Echostar Communs. Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005). Defendants have presented

---

[4]In reply, Plaintiffs demanded for the first time that the Court bar Defendant and its experts from relying on or presenting evidence of the destroyed information. As stated above, the Court declines to consider this argument as it was presented for the first time in reply, *Transocean*, 767 F.3d at 492, and the Court believes that such a sanction would be "greater than necessary to cure the [purported] prejudice . . . ." FED. R. CIV. P. 37(e)(1).

[5]*See also Arthur Anderson LLP v. United States*, 544 U.S. 696, 704, 125 S. Ct. 2129, 161 L. Ed. 2d 1008 (2005) ("Document retention policies . . . are common in business. It is, of course, not wrongful . . . to comply with a valid document retention policy under ordinary circumstances."); *Vick*, 514 F.2d at 737 (no spoliation where documents were destroyed under routine procedures); *King*, 337 F.3d at 556 (routine document retention policy constituted an "innocuous" reason for destruction of evidence); *Kermode v. Univ. of Miss. Med. Ctr.*, 2011 U.S. Dist. LEXIS 71624, at *13-*15 (S.D. Miss. July 1, 2011) (where documents were destroyed pursuant to automatic system prior to date that defendant would have had notice of the plaintiff's potential claim, there was no bad faith).

undisputed evidence of a reasonable data retention policy, and it appears to be undisputed that the HDRS documents and Product Safety Committee minutes were destroyed pursuant to that policy. Therefore, absent other factors, the Court declines to draw an inference of bad faith.

Plaintiffs argue that Defendant's data retention policy is unreasonable because some categories of documents have shorter retention periods than others, and the retention periods for some categories of documents are purportedly too short. The Court disagrees. First, Plaintiff has not cited any legal authority providing that a court should infer bad faith because a document retention policy imposes different retention periods on different categories of documents. Moreover, the Court disagrees with Plaintiff's implicit argument that some of the broad categories of documents included in Defendant's policy will always be more relevant to potential litigation than others. Relevance can not be assumed; it must be determined by reference to the nature of the plaintiff's claims and the content of the disputed documents. Finally, the Court notes that other courts have found that retention periods shorter than those at issue here were reasonable. *See, e.g. Lights of Am.*, 2012 U.S. Dist. LEXIS 17212 at *19 (45-day retention period was reasonable); *Cache La Poudre*, 244 F.R.D. at 621 (90-day retention period was reasonable); *Broccoli*, 229 F.R.D. at 510 (absent other factors, a 21-day retention period was "a risky but arguably defensible business practice undeserving of sanctions").

  *4. Testing Documents*

Finally, Plaintiff alleges that Defendant destroyed all documents related to

10

testing performed on the subject lawn mower design between 2002 and 2006. However, while Defendant's expert, Kyle Ressler, testified that he conducted extensive testing on the design, Plaintiff has not provided the Court with any evidence that Defendant generated any documents as a result of this testing. Likewise, the record contains no evidence regarding the nature or contents of these alleged documents, the dates on which they were created, the dates on which they were destroyed, or even the dates on which the tests were performed. Therefore, the Court is unable to determine whether there actually were any testing documents, whether Defendant destroyed them, when they were destroyed, whether there was a duty to preserve them at the time they were destroyed, and whether Defendant complied with its document retention policy.

As the party seeking a spoliation finding and sanctions, Plaintiff bears the burden of proof. *Rimkus*, 688 F. Supp. 2d at 615. As noted above, he has not provided the Court with evidence demonstrating that Defendant had a duty to preserve the alleged testing documents, or that they were destroyed in bad faith. Accordingly, he has not carried his burden.

### D.     *Conclusion*

For the reasons provided above, the Court **denies** Plaintiff's Motion for Sanctions [117] for Defendant's alleged spoliation of evidence.

SO ORDERED AND ADJUDGED this 31st day of August, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE