IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

RICKY BARNETT                                                                 PLAINTIFF

V.                                           CIVIL ACTION NO. 2:15-CV-2-KS-MTP

DEERE & COMPANY                                                         DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons below, the Court **grants in part and denies in part** Defendant's Motion to Exclude [130] the testimony of Plaintiff's expert, Thomas Berry. The Court grants the motion with respect to Berry's testimony concerning a proposed alternative design, but the Court denies the motion in all other respects.

### A.   *Background*

This is a product liability case. The Court discussed its factual background in a previous opinion. *See* Memorandum Opinion and Order at 1-2, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 15, 2015), ECF No. 26. Plaintiff intends to present expert testimony from Thomas Berry, a mechanical engineer, concerning alleged design and warning defects in the riding lawn mower that is the subject of this lawsuit, the Deere EZtrak Z425. Specifically, Berry believes that the subject lawn mower was defective because it lacked a roll over protection system ("ROPS") and seatbelt. Defendant filed a Motion to Exclude [130] Berry's testimony and a Motion for Summary Judgment [136].

### B.   *Rule 702 Standard*

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Therefore, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence," including: "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Id.* at 989 (punctuation omitted).

> Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience, but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the

facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

"Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* The testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). However, the Court's rule as gatekeeper is not meant to supplant the adversary system because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. While the Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate," *id.* at 595, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

"The proponent of expert testimony . . . has the burden of showing that the testimony is reliable," *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), and must establish the admissibility requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

## C. *Methodology*

First, Defendant argues that Berry did not employ a valid methodology in

3

determining that the specific lawn mower in this case was defective because it lacked a ROPS and seat belt. Defendant contends that Berry sorted through reports of injuries and news bulletins from the Consumer Product Safety Commission ("CPSC") related to all tractors and/or riding lawn mowers, without ensuring that the reports concerned substantially similar machines. Defendant further contends that Berry conducted no statistical analysis of the reports, failing to compare the rate of injury on machines with ROPS to the rate of injury on machines without ROPS.

According to Berry's report, he began by using the "design safety hierarchy" or "hazard discovery rating system," a methodology he claims has been recognized by certain professional organizations and taught in engineering schools nationwide. Exhibit A to Response at 14, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. July 26, 2016), ECF No. 179-1. In fact, Defendant utilizes a "hazard discovery rating system" in its own product development. *See* Exhibit A to Motion for Sanctions at 6, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 18, 2016), ECF No. 117-1. This process includes three steps: 1) eliminate hazards if possible without unduly compromising the function or utility of the machine, 2) provide some form of physical protection or guarding from remaining hazards, and 3) provide warnings and instructions, which can be practically be followed, for avoiding the hazards. Exhibit A [179-1], at 14.

Berry contends that Defendant should have provided physical protection from roll over, rather than relying on ineffective warnings and instructions. Among other things, he based his opinion on CPSC studies that indicate tip over and roll over are

4

the primary hazard in ride-on machine death incidents. *Id.* at 15. Defendant's expert,
Kyle Ressler admitted that Defendant also considers national databases, past product
performance, and safety history. Exhibit E to Response at 15, 28, *Barnett v. Deere &
Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. July 26, 2016), ECF No. 179-5. In fact, Ressler
testified that "in general, safety incidents, collections of incidents . . . on machines and
machine forms is important in reviewing as an engineer who is developing products .
. . [b]ecause you can learn from it . . . ." *Id.* at 28-29.

In his report, Berry also noted OSHA findings that "a ROPS with a seat belt .
. . will significantly reduce the hazards associated with roll overs." Exhibit A [179-1],
at 24. He cited other manufacturers' decision to include ROPS on mowers similar in
size and weight to the one at issue here, and their decision to retrofit older models with
ROPS. *Id.* at 22. Finally, he cited publications indicating that all mowers should
include a ROPS to protect users in case a roll over occurs. *Id.* at 25.

In summary, Berry did not only sort through a massive collection of injury
reports without heed for the specific details of each incident, as Defendant claims. His
opinions are supported by other sources, and he utilized the same "hazard discovery
rating system" or "design safety hierarchy" that Defendant utilizes in its own product
development. As Defendant noted in briefing, his use of CPSC reports from incidents
involving machines dissimilar to the one here presents analytical problems, as does his
failure to establish a control group by comparison to incidents involving mowers with
ROPS. However, this Court's "role as gatekeeper under *Daubert* is not intended to
serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d

239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. While the dissimilar CPSC reports may provide Defendant with fodder for cross-examination, the Court can not conclude that they render Berry's opinions so unreliable that they must be excluded.[1]

## D.   *Alternative Design*

Next, Defendant argues that Berry's testimony regarding a feasible alternative design is unreliable. "A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers." MISS. CODE ANN. § 11-1-63(f)(ii). "The proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Guy*, 394 F.3d at 327. While "experts are not required to physically build a model of a design alternative," *Brown v. Ford Motor Co.*, 121 F. Supp. 3d 606, 617 (S.D. Miss. 2015) (citing *Hyundai Motor Am. v. Applewhite*, 53 So. 3d 749, 756 (Miss. 2011)), they must "be able to independently establish the

---

[1]It is doubtful that all of the CPSC reports considered by Berry will be admissible at trial. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 328-29 (5th Cir. 2004) (accident reports that did not concern injury while operating the forklift that was the subject of the case were not relevant, and the trial court did not abuse discretion in excluding them from trial). This has no bearing on the reliability of Berry's testimony, though, as "experts may base their opinions on otherwise-inadmissible information, . . . so long as the information is the sort reasonably relied upon in the experts' field." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 523 (5th Cir. 2013).

technical basis for the utility and safety of the proposed alternative design." *Elliot v. Amadas Indus.*, 796 F. Supp. 2d 796, 808 (S.D. Miss. 2011). "While it might be the best practice for an expert to actually test the proposed design alternative, omitting this step does not render the expert's conclusions automatically invalid under the *Daubert* standard." *Graves v. Toyota Motor Co.*, No. 2:09-CV-169-KS-MTP, 2012 U.S. Dist. LEXIS 63173, at *14-*15 (S.D. Miss. May 4, 2012); *see also Watkins*, 121 F.3d at 992. For example, an expert witness may examine a manufacturer's own tests and designs and draw conclusions about feasible design alternatives. *Guy*, 394 F.3d at 327. Overall, the expert must "offer something demonstrating that he or she exercised the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Brown*, 121 F. Supp. 3d at 617.

This case concerns a 2007 Deere Z425 lawn mower with a 48-inch cutting deck. Berry's proposed alternative design is a 2008 Deere Z425 with a 54-inch cutting deck, upon which he attached a foldable ROPS. Exhibit H to Response at 20, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. July 26, 2016), ECF No. 179-8. During his deposition, Berry admitted that "a machine with a 54 inch deck is not the same as a machine with a 48 inch deck," *id.* at 16, but he also testified that the ROPS installed on the 54-inch machine could fit the 48-inch machine. *Id.* at 24. Berry testified that "wheel placement" affects the stability of the machine, and that the deck's mass affects its center of gravity. *Id.* at 16. He also admitted that adding a ROPS to a mower alters the center of gravity and increases the likelihood of a tip over, unless other design measures are implemented to "make the wheels wider or move the wheels back or add

7

weight to the front . . . ." *Id.* at 21. Berry did not incorporate such countermeasures in his proposed alternative design, *id.*, and he admitted that the machine had a higher center of gravity and less stability with ROPS than it did without. *Id.* at 25. In fact, tilt table testing demonstrated that his proposed 2008 Z425 with ROPS tipped over on less slope than a 2008 Z425 without ROPS. *Id.* at 21. Despite these test results, Berry concluded that installation of a ROPS and seatbelt on the subject 2007 Z425 was "technically and economically feasible," and that it "would have significantly reduced the risk without adversely affecting the utility of the machine." Exhibit A [179-1], at 33. He estimated that the cost of adding a ROPS and seatbelt to the Z425 would be $100.00 to $250.00 per machine. *Id.* at 34.

As noted above, a "feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers." MISS. CODE ANN. § 11-1-63(f)(ii). In the Court's opinion, the facts and analysis contained in Berry's testimony and report are wholly insufficient to support his conclusion that his proposal – simply adding a ROPS to the Z425 – is a feasible design alternative, as defined by Mississippi law. First, Berry did not even analyze the machine which is the subject of this lawsuit. The exemplar he used as a proposed alternative design had a larger cutting deck, and he admitted that the deck's mass would affect the machine's center of gravity. In that respect, his analysis of the exemplar machine – the 2008 Z425 with a 54-inch deck – is unreliable when applied to the machine that is the subject of this case.

Second, it is undisputed that his alternative design is actually more likely to roll

over with a ROPS than it is without. Berry's testing showed that the 2008 Z425 with a 54-inch deck tipped over on less slope with ROPS than it did without. In his report and testimony, Berry did not address how the increased likelihood of roll over affected the machine's utility, usefulness, practicality, or desirability. While Berry testified that certain countermeasures could be incorporated to balance out the extra weight from the ROPS, he did not incorporate any of them in his alternative design. Accordingly, these countermeasures are the sort of "conceptual[ ] possibilities" that are insufficient to meet Plaintiff's burden under the MPLA. *Guy*, 394 F.3d at 327.

Plaintiff attempts to evade this problem by arguing that the machine's defect is its crashworthiness, rather than its propensity to roll over. In other words, Plaintiff maintains that any machine with ROPS is safer than one without ROPS insofar as one operating the former is less likely to be seriously injured in the event of a roll over. This may be true, but the MPLA requires that a proposed alternative design not impair the product's utility, usefulness, practicality, or desirability. Berry intends to testify that an alternative design which is more likely to roll over and costs more would not impair the product's utility, usefulness, practicality, or desirability to users or consumers, but he has cited nothing to support this opinion. The Court is not required to "admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. On this issue, Berry's testimony reduces to a bare conclusion that consumers would trade a cheaper product that is less likely to roll over for a more expensive product that is more likely to roll over but includes additional safety features. In this respect, Berry's proposed expert testimony concerning a feasible

alternative design is unreliable, and the Court grants Defendant's motion with respect to it.

### E.   *ANSI Standards*

Defendant also argues that Berry's opinion that the subject mower should have had a ROPS is unreliable because it is inconsistent with the standards promulgated by the American National Standard Institute ("ANSI"). "The ANSI standards provide a set of minimum performance and dimensional requirements for the manufacture of products." *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 341 (5th Cir. 1999). It is undisputed that they are voluntary industry standards. The "existence and maintenance of [such] standards" is but one factor in the Court's analysis. *Watkins*, 121 F.3d at 989 (citing *Daubert*, 509 U.S. at 593-94).

Berry addressed the ANSI standards in his affidavit, Exhibit A [179-1], at 2, but he reached a different conclusion than ANSI. In its gatekeeping role, this Court's concern is Berry's method, rather than his conclusions. *Daubert*, 509 U.S. at 595. Accordingly, this issue goes to the weight of the testimony, rather than its admissibility.

### F.   *Warnings*

Finally, Defendant argues that Berry's opinions regarding the lawn mower's warnings are unreliable because they are inconsistent. In his report, Berry stated that warnings have "not been effective in eliminating or reducing the severity of the injuries being incurred by the public using riding lawn mowers and lawn tractors." Exhibit A [179-1], at 16. Nevertheless, he also stated that "Deere did not advise users that the

number one cause of deaths with ride-on mowers were rollovers and stability related accidents or of the need for rollover protection to protect users when a rollover occurs." *Id.* at 32. In his affidavit, he stated that "Deere provided no warning about the need for ROPS in the form of a decal or otherwise that a ROPS was available anywhere on the Z425." *Id.* at 2. And in his deposition, he testified that is "issue with the warnings in the manual" was that "they don't speak with respect to ROPS and the need for ROPS on the mower, and the number of deaths that occur with respect to ride on mowers." Exhibit H [179-8], at 15. Accordingly, Berry concluded that Defendant "failed to provide adequate warnings and instructions to the buyers and operators of their rear engine riding mower with respect to rollover hazard and how operators should protect themselves," and that this failure to warn was "causative of the severe injuries received by" Plaintiff. Exhibit A [179-1], at 33.

The Court agrees with Defendant that Berry's testimony is somewhat inconsistent insofar as he maintains both that warnings are ineffective, and that Defendant's failure to provide adequate warnings caused Plaintiff's injuries. However, the Court is mindful that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. One sentence in Berry's report indicates that warnings are ineffective, while the remainder of his testimony indicates that he believes Defendant should have provided a warning that specifically addressed the need for a ROPS and the potential severity of injury in the event of a roll over. This slight inconsistency goes to the weight of the

testimony, rather than its admissibility.

## G.      *Conclusion*

For the reasons below, the Court **grants in part and denies in part** Defendant's Motion to Exclude [130] the testimony of Plaintiff's expert, Thomas Berry. The Court grants the motion with respect to Berry's testimony concerning a proposed alternative design, but the Court denies the motion in all other respects.

SO ORDERED AND ADJUDGED this 8th day of September, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE