IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**RICKY BARNETT**                                                                       **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 2:15-CV-2-KS-MTP**

**DEERE & COMPANY**                                                                   **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This is a product liability case. The Court discussed its factual background in a previous opinion. *See* Memorandum Opinion and Order at 1-2, No. 2:15-CV-2-KS-MTP (S.D. Miss. May 15, 2015), ECF No. 26. Defendant filed a Motion for Summary Judgment [136]. For the reasons below, the motion is **granted in part and denied in part**. Specifically, the motion is granted as to Plaintiff's design defect claim, but it is denied as to Plaintiff's warning defect claim.

### I. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the

evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## II. DISCUSSION

Plaintiff asserted claims of strict liability and negligence. The Mississippi Product Liability Act ("MPLA") governs "any action for damages caused by a product, including but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty . . . ." MISS. CODE ANN. § 11-1-63. The statute provides the "exclusive remedy for products-liability claims," and it applies to any claim arising from damages caused by a product, including claims of "warnings or instruction defects, [and] design defects . . . ." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015). All other theories of tort liability – such as negligence or strict liability – are abrogated in product liability cases, "and the MPLA now provides the roadmap for such claims." *Id.* Applying the MPLA's framework to Plaintiff's Amended Complaint [39], it appears that Plaintiff asserted claims of design defect and warning defect.

### A. *Design Defect*

To succeed on a design defect claim, Plaintiff must meet the MPLA's evidentiary

requirements, including the following provisions:

> (a) The manufacturer, designer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:
>
> > (i) . . . The product was designed in a defective manner . . . ; and
> >
> > (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
> >
> > (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
>
> \* \* \*
>
> (f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)(3) of this section, the manufacturer, designer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:
>
> > (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
> >
> > (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

MISS. CODE ANN. § 11-1-63(a), (f).

Among other things, Defendant argues that Plaintiff has no admissible evidence

of a feasible alternative design, as defined by the MPLA. As recited above, "[a] feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers." MISS. CODE ANN. § 11-1-63(f)(ii). "The proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 327 (5th Cir. 2004). "[E]xperts are not required to physically build a model of a design alternative," *Brown v. Ford Motor Co.*, 121 F. Supp. 3d 606, 617 (S.D. Miss. 2015) (citing *Hyundai Motor Am. v. Applewhite*, 53 So. 3d 749, 756 (Miss. 2011)), but they must "be able to independently establish the technical basis for the utility and safety of the proposed alternative design." *Elliot v. Amadas Indus.*, 796 F. Supp. 2d 796, 808 (S.D. Miss. 2011). "While it might be the best practice for an expert to actually test the proposed design alternative, omitting this step does not render the expert's conclusions automatically invalid under the *Daubert* standard." *Graves v. Toyota Motor Co.*, No. 2:09-CV-169-KS-MTP, 2012 U.S. Dist. LEXIS 63173, at *14-*15 (S.D. Miss. May 4, 2012); *see also Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997). For example, an expert witness may examine a manufacturer's own tests and designs and draw conclusions about feasible design alternatives. *Guy*, 394 F.3d at 327. Overall, the expert must "offer something demonstrating that he or she exercised the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Brown*, 121 F. Supp. 3d at 617.

The Court excluded the testimony of Plaintiff's expert, Thomas Berry,

concerning his proposed alternative design. *See Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP, 2016 U.S. Dist. LEXIS 154774 (S.D. Miss. Nov. 8, 2016). "[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). Therefore, the Court will not consider Berry's testimony, reports, affidavit, or opinions concerning his proposed alternative design when addressing the current motion.

Beyond Berry's testimony concerning a proposed alternative design, Plaintiff presented evidence that Defendant included ROPS in the design of some commercial zero-turn mowers, and that some of Defendant's competitors have included ROPS in the design of machines purportedly similar to the one which is the subject of this lawsuit. *See* Exhibit A to Response at 75-76, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. July 26, 2016), ECF No. 177-1. However, Plaintiff has presented no admissible evidence of a *specific* alternative design of the machine which is the subject of this lawsuit. Plaintiff's evidence must consist of more than "conceptual[ ] possibilities," *Guy*, 394 F.3d at 327, and he must "independently establish the technical basis for the utility and safety of the proposed alternative design." *Elliot*, 796 F. Supp. 2d at 808. It is not enough to simply note that ROPS have been included in the designs of other mowers, without any technical analysis of their similarity to the subject mower, or of the utility, safety, or desirability of a ROPS installed on the subject mower.

Therefore, the Court finds that Plaintiff failed to meet his burden of proof with

5

respect to a feasible design alternative of the lawn mower which is the subject of this action. Without evidence of a specific feasible alternative design, his design defect claim fails.[1] The Court grants Defendant's Motion for Summary Judgment [136] as to Plaintiff's design defect claim.

## B. *Warning Defect*

To succeed on a warning defect claim, Plaintiff must meet the following evidentiary requirements:

(a) The manufacturer, designer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:

  (i) . . . The product was defective because it failed to contain adequate warnings or instructions . . . ; and

  (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

  (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

*  *  *

(c) (i) In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)(2) of this section, the manufacturer, designer or seller shall not be liable if the

---

[1]*See, e.g. Guy,* 394 F.3d at 327; *Watkins,* 121 F.3d at 992-93; *Estes v. Lanx, Inc.,* No. 1:14-CV-052-SA-DAS, 2015 U.S. Dist. LEXIS 171184, at *4 (N.D. Miss. Dec. 23, 2015); *Cauley v. Sabic Innovative Plastics, U.S., LLC,* No. 1:10-CV-26-KS-MTP, 2012 U.S. Dist. LEXIS 7047, at *9 (S.D. Miss. Jan. 23, 2012); *Previto v. Ryobi N. Am., Inc.,* No. 1:08-CV-177-HSO-JMR, 2011 U.S. Dist. LEXIS 3853, at *20-*22 (S.D. Miss. Jan. 14, 2011); *Williams v. Bennett,* 921 So. 2d 1269, 1277 (Miss. 2006).

        claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller, the manufacturer, designer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

    (ii)    An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product . . . .

* * *

(e)    In any action alleging that a product is defective pursuant to paragraph (a)(i)(2) of this section, the manufacturer, designer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

MISS. CODE ANN. § 11-1-63(a), (c), (e).

First, Defendant argues Plaintiff failed to provide evidence of the type of warning that should have been given. The Mississippi Supreme Court has indicated that a warning defect claim requires "proof as to what type of warning should have been given . . . ." *Estate of Hunter v. GMC*, 729 So. 2d 1264, 1277 (Miss. 1999); *see also 3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005). But Plaintiff did present such evidence. His expert, Thomas Berry, stated in his report that Defendant "did not advise users that the number one cause of deaths with ride-on mowers were rollovers and

7

stability related accidents or of the need for rollover protection to protect users when a rollover occurs." Exhibit A to Response at 32, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. July 26, 2016), ECF No. 177-1. Also, in his affidavit he stated that "Deere provided no warning about the need for ROPS in the form of a decal or otherwise that a ROPS was available anywhere on the Z425." *Id.* at 2. Finally, he testified at deposition that an "issue with the warnings in the manual" is that "they don't speak with respect to ROPS and the need for ROPS on the mower, and the number of deaths that occur with respect to ride on mowers." Exhibit H to Response at 15, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. July 26, 2016), ECF No. 179-8.

Defendant has not cited any case law requiring plaintiffs to provide more specific evidence, or to actually create a placard or decal to affix to the machine. Berry clearly stated, in general terms, the information that should have been communicated to Plaintiff. This evidence is sufficient to meet Plaintiff's summary judgment burden regarding the type of warning that Plaintiff alleges should have been given.

Next, Defendant argues that Plaintiff provided no evidence that the alleged warning defect proximately caused Plaintiff's injuries. Plaintiff testified that he read the instruction manual for the subject mower, and he was familiar with the safety labels on the machine. Exhibit F to Response at 11-12, *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP (S.D. Miss. July 26, 2016), ECF No. 177-6. Plaintiff's expert, Thomas Berry, stated in his initial report that "defects in the . . . warnings of the Deere Z425 EZ-Trak tractor/mower were causative of the severe injuries received by Ricky

8

Barnett." Exhibit A [177-1], at 33. Berry also stated in his affidavit:

> If brought to their attention, most operators will recognize that rollovers can occur. However most if not all do not appreciate the true extent of the hazard associated with rollovers. The relevant factors with regard to whether a customer appreciates the need for ROPS, thereby overcoming the belief that the mower is safe as equipped by the manufacturer, would be whether the customer has an appreciation of the extent of the rollover hazard, knowledge about the frequency of the rollovers, knowledge about how fast rollovers occur as affecting their ability to escape in a rollover, knowledge about the innumerable conditions that can cause rollovers, and knowledge about the likelihood that he or she will or will not be able to escape in a rollover.

*Id.* at 4. Taken as a whole, this evidence is sufficient to support a jury's inference that Plaintiff would have heeded a warning in line with Berry's recommendations and, therefore, that the allegedly insufficient warnings caused Plaintiff's injuries.

Defendant notes that Berry's testimony is contradictory. Indeed, Berry stated in his rebuttal report that it was unreasonable to assume that an operator would read and follow instructions and/or warnings in an operator's manual or machine labels. *Id.* at 66. He said: "It is not likely that each operator will read, remember and follow each and every instruction in the operator's manual or on the machine or in the safety video." *Id.* But the Court is not permitted to make credibility determinations or weigh the evidence. *Deville*, 567 F.3d at 164.

### III. CONCLUSION

For these reasons, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [136]. The Court grants the motion as to Plaintiff's design defect claim, but it denies the motion as to Plaintiff's warning defect claim.

SO ORDERED AND ADJUDGED this 10th day of November, 2016.

9

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE